[Civ. No. 25934.   Second Dist., Div. One.   Oct. 16, 1962.]

SEYMOUR M. LAZAR, Plaintiff and Appellant, v. ESTATE OF NATHAN RICHARD LAZAR, Defendant and Respondent.

Marvin A. Freeman and Ivon B. Blum for Plaintiff and Appellant.

Ezra E. Stern for Defendant and Respondent.

WOOD, P. J.—On May 8, 1961, the demurrer of "Estate of Nathan Richard Lazar, Deceased," to the complaint was sustained without leave to amend. Also at that time, the court granted defendant's motion for an order quashing service of summons.

A judgment, which was entered on May 10, 1961, recited: that the demurrer and motion to quash service of summons came on for hearing; Ezra E. Stern, attorney, made a special appearance on behalf of "the defendant herein"; that plaintiff did not appear; that the demurrer having been sustained without leave to amend, and the motion to quash service of summons having been granted, it is ordered, adjudged, and decreed "that the plaintiff take nothing by his cause of action on file herein," and that defendant receive judgment for $12.50 costs.

Plaintiff appeals from the judgment.

The demurrer recited: that "the defendant 'Estate of Nathan Richard Lazar, Deceased,' above-named, and without admitting, and in fact denying, the existence of said defendant as a legal entity capable of being sued, and by way of SPECIAL APPEARANCE only, and not by way of general appearance, demurs to the Complaint" upon the ground that the "Court has no jurisdiction of the person of said defendant." It was recited further therein that "said defendant prays that this demurrer be sustained without leave to amend, that plaintiff take nothing by reason of his Complaint and that the said defendant have costs of suit herein incurred." The demurrer was signed: "Ezra E. Stern Attorney for 'Defendant.' "

The notice of motion to quash service of summons recited: That on May 8, 1961, the " 'defendant' above named will move the court for an order quashing service of summons," or in the alternative for an order quashing summons; that the motions will be made upon the grounds that there is no party defendant named in said summons or "before the court upon whom service of process may be made, and further that

no service of summons was made on any defendant herein." Under the title of the notice of motion, the following words appear: "(Special Appearance) (Accompanying Demurrer to Complaint)."

The declaration of Mr. Ezra E. Stern with respect to the notice to quash service stated: he is an attorney at law; on April 19, 1961, at his office, he received through the mail an envelope from Seymour M. Lazar (plaintiff) which envelope contained a copy of summons and complaint in this said action, together with a document entitled Exhibit "A"; that at no time was said summons or complaint or a copy thereof served personally on him (declarant); that he was not the therein named defendant "Estate of Nathan Richard Lazar, deceased," nor was he authorized to accept service of process for or on behalf of said defendant; that said declaration is made for the purpose of procuring an order of court quashing service of summons on (declarant) and on said defendant, or for an order quashing said summons.

The complaint alleged that Nathan Richard Lazar died on October 10, 1958; plaintiff filed a creditor's claim "in the Estate" of said deceased in the Superior Court of Los Angeles County; said claim was rejected on or about January 20, 1961; plaintiff is the son of Nathan Richard Lazar, the decedent; plaintiff and decedent "had a relationship of trust" wherein the decedent managed the money and any financial interest plaintiff may have had; the financial arrangement with decedent commenced when plaintiff was 16 years of age; when plaintiff was 18 years of age they engaged in numerous transactions together; in June 1946 they purchased 100 shares of Broadway State Bank stock, which bank was later merged with the Security-First National Bank, and said estate is holding said shares or the equivalent thereof; in 1947 plaintiff sold some land for $5,000 and delivered said money to decedent to be used in his business; in 1948 plaintiff and decedent engaged in the business of second trust deed financing, and plaintiff became a real estate broker, and thereafter for a period of approximately 10 years plaintiff delivered all his commissions as such broker to decedent who managed said funds and invested them in first and second trust deeds—the total amount of such commissions was not less than $120,000; in 1951 plaintiff became an attorney at law, and thereafter as an escrow holder in connection with the trust deed business he received escrow fees which he delivered to decedent who used said funds for investments—the total amount of such

fees was not less than $30,000; beginning in 1952 and continuing until the time of death of the father, the plaintiff received fees for collecting the payments on trust deeds, which fees he delivered to decedent who used said funds for investment purposes—the total amount of such fees was not less than $45,000; in 1952, 1953, and 1954, plaintiff received $7,200 as attorney's fees from one Hunsaker, which amount plaintiff: delivered to decedent who used the same for investments; also from 1952 to 1954 plaintiff received other amounts as attorney's fees in connection with the trust deed business, which fees were delivered to decedent who used the same for investments—the total amount of such fees was not less than $25,000; about September 1953 one Orduno made an assignment for benefit of creditors which assignment included real property on which decedent held a deed of trust, and thereafter, pursuant to a program suggested by plaintiff, the decedent advanced $20,000 to the assignee for an assignment to decedent of the real property and the oil interests of Orduno therein—that decedent had agreed that he would give plaintiff 50 per cent of the profits derived from the real property and oil interests, if plaintiff would devise a method or program whereby decedent could acquire such property and oil interests; that such 50 per cent, agreed to be paid to plaintiff, was not less than $35,000; the decedent purchased certain deeds of trust for plaintiff, and thereafter decedent received the funds from those deeds—the amount of such funds was not less than $45,000.

It is conceded that plaintiff Seymour M. Lazar, an attorney at law, appearing in propria persona, erred in naming the "Estate of Nathan Richard Lazar, Deceased," as the defendant in the action (instead of naming the executors of the will of said decedent as defendants). The "Estate" of a decedent is not an entity known to the law. (*Tanner* v. *Estate of Best,* 40 Cal.App.2d 442 [104 P.2d 1084].)    In *Estate of Bright* v. *Western Air Lines, Inc.,* 104 Cal.App.2d 827, 828-829 [232 P2d 523], it was said: "An 'estate' is not a legal entity and is neither a natural nor artificial person. It is merely a name to indicate the sum total of the assets and liabilities of a decedent, or of an incompetent, or of a bankrupt. [Citations.] An 'estate' can neither sue nor be sued."    It is apparent that plaintiff intended to commence an action, according to proper procedural methods, for the purpose of recovering certain amounts from assets belonging to decedent, or held by decedent for the plaintiff, at the time of decedent's

death. The plaintiff failed to designate as a defendant a natural or artificial person who was authorized to act as the representative of decedent. The summons and complaint were mailed to the office of the attorney for the executors of the will of the decedent. This was not a proper manner for serving such documents. In any event, irrespective of plaintiff's failure to name a proper defendant and to serve the summons and complaint properly, the attorney who received the documents filed a demurrer on behalf of "the defendant," stating therein that the defendant "Estate," without admitting and in fact denying the existence of defendant as a legal entity, and by way of special appearance only, demurs to the complaint upon the ground that the court has no jurisdiction of the person of said defendant. The prayer in the demurrer was that the demurrer be sustained without leave to amend, that plaintiff take nothing by the complaint, and that "defendant" have costs. (That Mr. Stern was the attorney for the executors of the will of decedent is shown in his affidavit in opposition to motion to set aside ruling on demurrer. It was said therein that Mr. Stern, on behalf of the coexecutors, sent to plaintiff a rejection of creditor's claim. [Clerk's Tr., p. 42.])

With reference to amending the complaint to include the executors as the named defendants, the respondent "Estate" asserts there was no party defendant or any controversy before the court as to which an amendment could be made. Respondent's position seems to be that even though the "Estate" is not a legal entity *against* which judgment may be obtained, it should be regarded as an entity *in favor* of which judgment may be obtained.

The asserted special appearances on behalf of the "Estate" for the purposes of demurring and of moving to quash service of summons and complaint were made by the attorney who was the attorney for the executors of the will of said decedent. By such appearances it was sought not only to quash such service but also to obtain further relief by way of an order sustaining the demurrer without leave to amend, and a judgment that plaintiff take nothing by reason of the complaint. The attorney's request for such order and judgment on behalf of the "Estate" indicates that the attorney considered that the asserted special appearances, for the purposes of raising the point that the defendant "Estate" was a nonentity, entitled such alleged defendant to more relief than merely quashing service of the summons and complaint. The demurrer was sustained without leave to amend, and the

judgment provided that plaintiff take nothing by the complaint. A result of granting the additional relief under the asserted special appearances is that the plaintiff, notwithstanding his inadvertence or other reason for naming the ''Estate'' as the defendant, was denied the right to amend his complaint to name as the proper defendants the executors of the will of said decedent.

If the court had made only an order quashing service of summons and complaint, the plaintiff would have been entitled to amend his complaint to name the proper defendants (the executors), and he could have made proper service of the summons and the amended complaint. By reason, however, of the order prohibiting plaintiff from amending his complaint, the nonentity defendant (as to which, service was quashed because it was a nonentity) obtained an order which in effect granted relief on the merits of the case (in favor of the nonentity) in the same manner that relief might have been granted if there were proper defendants. Such a result indicates that the attorney for the executors who filed the asserted special appearances for the nonentity (the ''Estate'') was seeking general relief on the merits in the name of the ''Estate,'' which relief ordinarily would be sought by the executors. The attorney who appeared for the ''Estate'' states in his brief that ''it must have been obvious to the lower court that the logical defendants should have been the executors of the last Will of said Nathan Richard Lazar, deceased.'' Appellant argues that, under these circumstances where the attorney for the executors sought such general relief in the name of the ''Estate'' (i.e., relief prohibiting amendment and denying recovery by plaintiff), the trial court should have ruled that the executors had made a general appearance in the action. It is not necessary to determine herein whether there was such a general appearance. If there was such a general appearance, the court should not have sustained the demurrer without leave to amend. If the only appearances were the asserted special appearances by the nonentity (the ''Estate'') for the purpose of quashing service and demurring, the court should not have sustained the demurrer without leave to amend, and should not have rendered judgment that plaintiff take nothing.

Respondent asserts that the court properly sustained the demurrer without leave to amend. The argument with respect to this assertion is that the statute of limitations (Prob. Code, § 714) had run as to the executors, and since they could not have been brought in as parties within the proper time, it

would have been a meaningless act to grant leave to amend. Said section 714 of the Probate Code provides: "When a claim is rejected by the executor or administrator or by the judge, written notice of such rejection shall be given . . . to the holder of the claim . . . and the holder must bring suit in the proper court against the executor or administrator, within three months after date of service of such notice . . . ; otherwise the claim shall be forever barred." The complaint alleges that the claim was rejected on or about January 20, 1961. The action was commenced on April 18, 1961. There is no allegation in the complaint as to when, if at all, a written notice of rejection of the claim was served on plaintiff. This action was commenced within the time required by said section 714. That section pertains to claims of creditors, and it "states the time within which an action upon a creditor's claim must be commenced." (*De Hermosillo* v. *Morales,* 146 Cal.App.2d 819, 829 [304 P.2d 854].) ▇▇ In the present case, some of the allegations in the complaint are to the effect that decedent held some of the property as trustee for the benefit of plaintiff. Said section 714 is not applicable where plaintiff seeks to impose a trust upon property which was held by a decedent. (*Elizalde* v. *Elizalde,* 137 Cal. 634, 642 [66 P. 369, 70 P. 861]; see *Estate of Dabney,* 37 Cal.2d 672, 680 [234 P.2d 962].) In the present case it appears that the claims of plaintiff were not limited to creditor's claims, and therefore section 714 was not applicable to all the claims alleged in the complaint. It also appears that the complaint does not show when, if at all, notice of rejection of the claim was served. It cannot be determined from the complaint that the claims of plaintiff were barred by the statute of limitations. Furthermore, it is to be noted that under some circumstances a pleading may be amended after the period of time specified in a statute of limitations has expired. In *Austin* v. *Massachusetts Bonding & Ins. Co.,* 56 Cal.2d 596, 602-603 [15 Cal.Rptr. 817, 364 P.2d 681], it was said: "[I]t is settled that a defendant sued by a fictitious name and later brought into the case by an amendment substituting his true name is considered a party to the action from its commencement for purposes of the statute of limitations. A defendant unaware of the suit against him by a fictitious name is in no worse position if, in addition to substituting his true name, the amendment makes other changes in the allegations on the basis of the same general set of facts. And of course, as to a defendant who knows that he has been designated by a fictitious name in the original complaint, appli-

cation of the modern rule does not affect him differently from a defendant designated by his true name."

In the present case it is apparent, as above indicated, that plaintiff intended to commence an action, according to proper procedural methods, for the purpose of obtaining a judgment which could be satisfied from assets belonging to decedent at the time of his death, or from assets held by him for the benefit of plaintiff. The name, "Estate of Nathan Richard Lazar, Deceased," which was used as the name of the defendant, was not used as a fictitious name (as in the city case), but it is apparent that the use of that name under the circumstances here was intended as the proper legal name under which plaintiff might prosecute his action and satisfy the judgment from such assets. The attorney for the executors appeared in the action on behalf of the named defendant "Estate." He was of the opinion (as stated in his brief) that it was obvious that the logical defendants should have been the executors. Under such circumstances it is reasonable to assume that the executors were aware that the word "Estate," used in naming the defendant, was an erroneous designation of the defendants. It is apparent that the executors would not be taken by surprise if the complaint were amended to name the executors as the defendants. The plaintiff was entitled to amend the complaint.

The judgment is reversed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied November 14, 1962, and respondent's petition for a hearing by the Supreme Court was denied December 12, 1962.